UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL MCBETH,

                    Plaintiff,

-against-

CITY OF NEW YORK,

                    Defendant.

---

No. 23-CV-10389 (LAP)

OPINION AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the motion to dismiss filed by Defendant City of New York ("Defendant" or "City of New York") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiff opposes the motion.[2] For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.

---

[1] (See Motion to Dismiss the First Amended Complaint ("Motion to Dismiss"), dated May 3, 2024 [dkt. no. 10]; Declaration of Assistant Corporation Counsel Rachel Kreutzer in Support of Defendant's Motion to Dismiss the Amended Complaint (the "Kreutzer Declaration" or "Kreutzer Decl."), dated May 3, 2024 [dkt. no. 11]; Memorandum of Law in Support of Defendant's Motion to Dismiss the First Amended Complaint ("Def. Br."), dated May 3, 2024 [dkt. no. 12]; Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the First Amended Complaint ("Def. Reply"), dated July 5, 2024 [dkt. no. 18].)

[2] (See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Opp'n"), dated June 18, 2024 [dkt. no. 17].)

I.   **Background**[3]

A. **Factual Background**

Plaintiff Daniel McBeth is a black man with national origin in Guyana, South America, and a former employee of the Fire Department of New York ("FDNY"). (First Amended Complaint ("Amended Complaint" or "AC"), dated February 25, 2024 [dkt. no. 4] §§ 1, 3.) Plaintiff was employed by the FDNY from November 1991 to February 2012, initially as a fire inspector and then as a senior inspector within the Bureau of Fire Preventions District Office. (Id. §§ 2, 4.) The FDNY is owned, controlled, and operated by the City of New York. (Id. § 5.)

On May 29, 2018, Deputy Chief Inspector Boris Shapner ("DCI Shapner"), an employee Plaintiff supervised who is a white man of Russian national origin, reported that a more junior employee, Associate Fire Protection Inspector Dwayne Hoyte ("AFPI Hoyte"), had neglected to conduct a fuel oil storage inspection and falsely reported it as completed. (Id. §§ 12-13.) DCI Shapner then brought him to Plaintiff's office, and at this meeting, AFPI Hoyte reported that DCI Shapner was instructing other inspectors to

_____

[3] The facts in this Opinion are drawn primarily from the Amended Complaint as well as the exhibits attached to the Kruetzen Declaration, which are integral to the Amended Complaint. See DiFolco v. MSNBC Cable, L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim[,] . . . a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

conduct "ghost" inspections (neglecting to show up for the inspection but nevertheless charging the customer). (<u>Id.</u> §§ 13-14.) AFPI Hoyte also admitted that he and DCI Shapner had conducted "drive-by" inspections (appearing at a premises for an inspection without conducting an adequate, thorough inspection). (<u>Id.</u> §§ 11, 14.) DCI Shapner denied these allegations (<u>id.</u> § 15), but had previously been reported for false reports in other Districts (<u>id.</u> § 16). In response to these allegations, Plaintiff considered transferring DCI Shapner to another District Office, but there was no DCI available to replace him. (<u>Id.</u> § 17.)

In February 2019, Human Resources requested that Plaintiff permit DCI Shapner and a DCI from another District Office to swap positions. (<u>Id.</u> § 18.) After Plaintiff accepted this request, DCI Shapner was transferred, and a different DCI was substituted in his place. (<u>Id.</u> § 19.)

On July 30, 2019, Plaintiff emailed the NYC Department of Investigations to report the ghost and drive-by inspections, as well as the complaints made against DCI Shapner. (<u>Id.</u> § 20.)

Following Plaintiff's report, white FDNY employees subjected him to various retaliatory conduct. (<u>See id.</u> § 35.) First, on October 7, 2019, DCI Shapner filed a complaint with the Equal Employment Opportunity ("EEO") Office, alleging Plaintiff retaliated against him. (<u>Id.</u> § 22.) After this claim was denied, DCI Shapner said he would "would not stop until Plaintiff was

fired" and that he "prefer[red] someone white to be his supervisor" claiming that "in Russia, there wouldn't be a black supervisor." (Id. §§ 23-24.)

Then, on December 27, 2019, AFPI Hoyte filed a complaint with the EEO Office, alleging that Plaintiff questioned him about the EEO investigation conducted in response to DCI Shapner's complaint, which violated the FDNY EEO policy.  (Id. ¶ 25.)

From March 2020 until April 2020, after Plaintiff was diagnosed with COVID-19, he was aggressively questioned and berated by his supervisor, Chief Kevin Brennan ("Chief Brennan"), for his failure to show up for work.  (Id. ¶ 34.)  When a white employee was absent due to an accident on the job, Chief Brennan did not question the absence.  (Id.)

On November 1, 2020, Plaintiff's parking spot was given to a lower-ranking white employee, without justification or notice to Plaintiff.  (Id. ¶ 32.)

On January 7, 2021, Plaintiff was falsely accused of violating FDNY regulations by 1) claiming DCI Shapner's allegations against Plaintiff were false during a September 11, 2019 Deputy Chief Inspectors meeting (id. ¶ 26); 2) confronting DCI Shapner, calling him dishonest, and accusing him of running to the EEO Office (id. ¶ 27); 3) stating during an October 2019 staff meeting that Plaintiff was not afraid of employees going to the EEO Office because he had done nothing wrong (id. ¶ 28); and 4) passing

questions and answers to AFPI Hoyte for a promotional interview (id. ¶ 29).

Also on January 7, 2021, Plaintiff was served with a Notice of Charges and Specifications informing him that he was being reassigned, effective February 15, 2021, to a position that would preclude Plaintiff from working with DCI Shapner and AFPI Hoyte. (Id. ¶ 30.)  Plaintiff was also directed to avoid contact with both DCI Shapner and AFPI Hoyte.    (Id. ¶ 31.)  Plaintiff's reassignment broke standard protocol—to reassign the lower ranking employee—because Plaintiff is senior to both employees.  (Id.)

**B.    Administrative & Procedural History**

On July 9, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  (See Ex. 1 to the Kreutzer Decl. ("Ex. 1") [dkt. no. 11-1].)  On August 30, 2023, the EEOC issued a Right to Sue letter.  (See Ex. 2 to the Kreutzer Decl. ("Ex. 2") [dkt. no. 11-2].)  On November 28, 2023, Plaintiff filed his initial complaint in this Court. (Complaint ("Initial Complaint" or "Initial Compl."), dated November 28, 2024 [dkt. no. 1].)  On February 25, 2024, Plaintiff filed the Amended Complaint, alleging claims of discrimination, retaliation, and hostile work environment on the basis of race and national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(1); and New York City

Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, et seq. (See AC    ¶¶ 36-45.)[4]  Plaintiff also claims he was subjected to discrimination in violation of 42 U.S.C. § 1981 and asserts a 42 U.S.C. § 1983 claim for municipal liability.  (See AC ¶¶ 40-41.)[5]

## II.  Legal Standards

### A.   Pleading Standard Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  In re Actos End-Payor Antitrust Litig., 848 F.3d 89, 97 (2d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  That

---

[4] The Amended Complaint also includes allegations of discrimination on the basis of "equal pay," sex, and age.  (AC §§ 7, 45.) Plaintiff acknowledges that these claims were inadvertently included (Pl. Opp'n at 2), and are deemed withdrawn.  See Jingle Kids USA, LLC v. In Colour Cap. Inc., No. 22-CV-7089, 2023 WL 6392725, at *2 (S.D.N.Y. Oct. 2, 2023).

[5] Specifically, Plaintiff brings four counts against Defendant: (1) Count One alleges discrimination, a hostile work environment, and retaliation on the basis of race and national origin in violation of Title VII; (2) Count Two alleges discrimination in violation of 42 U.S.C. § 1981 and invokes 42 USC § 1983 as a basis to enforce Plaintiff's federal rights; (3) Count Three alleges discrimination, a hostile work environment, and retaliation on the basis of race and national origin in violation of the NYSHRL; and (4) Count Four alleges discrimination in violation of the NYCHRL. (See id. ¶¶ 36-44.)

"standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Palin v. N.Y. Times Co., 940 F.3d 804, 810 (2d Cir. 2019). Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

When considering a motion to dismiss, the Court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences" in the plaintiff's favor. Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020) (cleaned up). The Court is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations." Id. (ellipsis omitted). "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (cleaned up).

### B. Discrimination

Plaintiff asserts claims for unlawful discrimination, hostile work environment, and retaliation under Title VII, the NYSHRL, and the NYCHRL. (See AC ¶¶ 36-38, 42-45.) Plaintiff appears to assert his discrimination claims based upon theories of disparate treatment and hostile work environment. (See generally id.

¶¶ 10-25; see also id. ¶¶ 38, 43, 45.)[6]  Plaintiff also claims he was subjected to discrimination in violation of 42 U.S.C. § 1981 and asserts a 42 U.S.C. § 1983 claim for municipal liability.  (Id. ¶¶ 40-41.)

### 1.  Disparate Treatment Discrimination

#### a. Title VII

To assert a claim of employment discrimination under Title VII, a plaintiff must allege "'(1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin.'"  Buon v. Spindler, 65 F.4th 64, 78 (2d Cir. 2023) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015)).  When faced with a Title VII discrimination claim, courts in this Circuit engage in the three-step burden shifting framework the Supreme Court laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See id. (citing Littlejohn v. City of N.Y., 795 F.3d 297, 312 (2d Cir. 2015)).

First, under this framework, the plaintiff must establish a prima facie case of discrimination.  See id. (citing Vega, 801 F.3d at 83).  Second, if the plaintiff succeeds, the burden shifts to the employer to "'articulate some legitimate, nondiscriminatory

---

[6] While Plaintiff does not explicitly plead hostile work environment as a basis for his Section 1983 or NYCHRL claims (see id. ¶¶ 39-41, 44-45), the Court construes the Amended Complaint to allege hostile work environment as a basis for each of Plaintiff's causes of action.

reason for the disparate treatment.'" Id. (quoting Vega, 801 F.3d at 83). Third, if the employer succeeds in its articulation of a valid reason for its treatment of the plaintiff, the plaintiff must then "'prove that the employer's [given] reason was in fact pretext for discrimination.'" Id. at 78-79 (quoting Vega, 801 F.3d at 83).

What a plaintiff must do to establish his prima facie case differs depending on the stage of the case. See Littlejohn, 795 F.3d at 307. At this early stage of the litigation, a plaintiff's prima facie requirements are "relaxed." Id. Specifically, at the pleading stage, the Court does not "'require a plaintiff to plead facts establishing a prima facie case.'" Buon, 65 F.4th at 79 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)). Instead, "absent direct evidence of discrimination," Plaintiff's burden to survive a motion to dismiss is to plead facts sufficient to show that he "(1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Id. (cleaned up).

### b. Section 1983

To pursue a claim against a state actor based on the violation of rights guaranteed in § 1981, § 1983 is the "exclusive federal remedy." Duplan v. City of New York, 888 F.3d 612, 619, 621 (2d Cir. 2018) (emphasis omitted); see also Gladwin v. Pozzi, 403 F.

App'x 603, 604-05 (2d Cir. 2010) (summary order) (explaining that plaintiff's § 1981 claims against a state actor are "encompassed" by her § 1983 claims and analyzed under § 1981).[7]  Accordingly, public employees "aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." Vega, 801 F.3d at 87 (citation omitted).[8]

The pleading standards for discrimination claims brought under § 1983 mirror the standards for Title VII claims. See Valdez v. Enlarged City Sch. Dist. of Middletown, 2023 WL 2665561, at *6 (S.D.N.Y. Mar. 28, 2023); see also Royall, 2024 WL 4266546 at *11 ("Claims of discrimination under § 1983 are analyzed under the familiar three-part framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)").  In addition, "for a § 1983 discrimination claim to survive a . . . motion to dismiss, a plaintiff must plausibly allege . . . that the adverse action was taken by someone acting under color of state law." Vega, 801 F.3d at 89 (quotation marks omitted).

---

[7] § 1983 itself does not create substantive rights but provides "a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).
[8] Plaintiff explicitly "invokes" § 1983, but to the extent he also asserts a violation of § 1981, the Court construes that claim under § 1983. See Royall v. City of Beacon, 2024 WL 4266546, at *10 (S.D.N.Y. Sept. 23, 2024) (considering plaintiff's § 1981 claims against state actors as brought under § 1983).

However, "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Thus, to establish a Monell claim against a city based on the unconstitutional actions of its employees, a plaintiff is required to plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007).  In determining municipal liability, a court "conduct[s] a separate inquiry into whether there exists a 'policy' or 'custom.'" Kiss v. Torres, No. 21-CV-10391, 2024 WL 1210941, at *20 (S.D.N.Y. Mar. 19, 2024).

### c. NYCHRL and NYSHRL

N.Y.C. Admin. Code § 8-107(1)(3) makes clear that it is an "unlawful discriminatory practice" for an employer to discriminate against an employee on the basis of "race, creed, color [or] national origin . . . in compensation or in terms, conditions or privileges of employment."  Because the discrimination provisions under the NYCHRL are "uniquely broad," this Court must analyze Plaintiff's discrimination claim under the NYCHRL "'separately and independently' from . . . federal discrimination claims" he brings.  Miller v. Levi & Korinsky LLP, 2023 WL 6293940, at *4 (S.D.N.Y. Sept. 27, 2023) (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013)).  To

state a discrimination claim under the NYCHRL, "the plaintiff need only show differential treatment—that [he] is treated 'less well'—because of a discriminatory intent." Szewczyk v. Saakian, 774 F. App'x 37, 38 (2d Cir. 2019) (summary order) (quoting Mihalik, 715 F.3d at 110). This means that "[t]he NYCHRL does not require that a plaintiff prove an adverse employment action." Ojeda v. Schrager, 2024 WL 2138038, at *4 (S.D.N.Y. May 13, 2024) (citations omitted).

However, the Court of Appeals has warned District Courts to remain "mindful that the NYCHRL is a not a general civility code." Szewczyk, 774 F. App'x at 38. "The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." Milhaik, 715 F.3d at 110. Thus, for Plaintiff's NYCHRL claim to survive, he must allege "differential treatment that is 'more than trivial, insubstantial, or petty.'" Torre v. Charter Comm'cns, Inc., 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) (quoting Gorman v. Covidien, LLC, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015)).

Under the NYSHRL, Section 296(1) renders it unlawful "[f]or an employer . . . because of an individual's . . . race, creed, color, national origin . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Following the New York legislature's 2019 amendment to the NYSHRL, see N.Y. Exec. Law § 300, courts

12

must now scrutinize discrimination claims brought pursuant to the NYSHRL under a lenient pleading standard similar to the standard for NYCHRL discrimination claims.  See Doolittle, 2023 WL 7151718, at *7.[9]

  2.  Hostile Work Environment

    a. Title VII

    "To establish a hostile work environment under Title VII . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Littlejohn, 795 F.3d at 320-21 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  A plaintiff must satisfy both an objective and a subjective standard.  Id. at 321.  Accordingly, he must allege both that the employer's conduct was "severe or

---

[9] The 2019 amendment stated that the existing NYSHRL provisions relating to discrimination claims should be "construed liberally" regardless of how analogous federal pleading standards have been construed, N.Y. Exec. Law § 300, reversing the prior practice of analyzing NYSRHL employment discrimination claims under the same standard as Title VII.  See, e.g., Helmes v. South Colonie Cent. School Dist., 564 F.Supp.2d 137, 152 (N.D.N.Y. 2008).  While some courts have noted it is unclear if the 2019 amendment made the NYCHRL and NYSHRL pleading standards the same, see Shaughnessy v. Scotiabank, 2024 WL 1350083, at *10 (S.D.N.Y. March 29, 2024); Nezaj v. PS450 Bar & Rest., 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024), the Court of Appeals has recently considered NYCHRL and NYSHRL discrimination claims together.  See Valerio v. Metro. Transportation Auth., No. 24-1614, 2025 WL 686028, at *3 (2d Cir. Mar. 4, 2025) (summary order).

pervasive enough that a reasonable person would find it hostile or abusive" and that the plaintiff "subjectively perceive[d] the work environment to be abusive." Id. (internal quotations and citations omitted).

Determining the objective element requires a court to "consider the totality of the circumstances," which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris, 510 U.S. at 23). "[T]he crucial inquiry focuses on the nature of the workplace environment as a whole . . . ." Kaytor v. Electric Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010) (emphasis and internal quotation marks omitted).

### b. Section 1983

A plaintiff's showing to assert a § 1983 hostile work environment claim parallels the showing required to plead a Title VII claim. See Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006); see also Littlejohn, 795 F.3d at 320-21. In addition, to assert a claim against the City, Plaintiff must "prove that the hostile work environment [he] complained of was the product of a [City] 'policy or custom.'" Legg v. Ulster County, 979 F.3d 101, 111 n.5 (2d Cir. 2020) (quoting Monell, 436 U.S. at 694).

c. *NYCHRL and NYSHRL*

Under the NYCHRL, there "are not separate standards" for hostile work environment and disparate treatment claims. Johnson v. Strive E. Harlem Emp. Grp., 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014).  Instead, "the former is subsumed into the latter[.]"  Rothbein v. City of N.Y., 2019 WL 977878, at *9 n.12 (S.D.N.Y. Feb. 28, 2019).  Courts therefore apply the same lenient pleading standard to NYCHRL hostile work environment claims as the standard used to assess disparate treatment claims brought pursuant to the NYCHRL.  See id.  Thus, as is the case for disparate treatment claims, all a plaintiff must do to survive a motion to dismiss a hostile work environment claim under the NYCHRL is allege she was treated "less well" due to her "membership in a protected class."  Bautista v. PR Gramercy Square Condominium, 642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022) (internal quotations and citations omitted); see also Santiago v. ACACIA Network, Inc., 634 F. Supp. 3d 143, 155-56 (S.D.N.Y. 2022) (allegations that black plaintiff was paid less and received fewer opportunities for promotion than her non-black comparators sufficed to allege plausibly she was treated less well due, in part, to her race).

Similarly, pursuant to the 2019 amendments to the NYSHRL, stating a hostile work environment claim under NYSHRL now requires only that the plaintiff plead sufficient facts showing he was

15

"subjected to inferior terms, conditions, or privileges of employment" due to his membership in a protected class. Samuels v. City of N.Y., 2023 WL 5717892, at *9 (S.D.N.Y. Sept. 5, 2023). Plaintiff's pleading requirements are thus identical to those he bears to sustain his NYSHRL claims based on a disparate treatment theory.

###    C.    Retaliation

####        1.    Title VII

As with discrimination claims, the Court analyzes retaliation claims brought under Title VII under the uniform burden-shifting framework set forth by the Supreme Court in McDonnell Douglas. See Littlejohn, 795 F.3d at 315 (citing Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)).

Under this standard, surviving a motion to dismiss requires that the complaint plausibly allege that (1) the plaintiff participated in a protected activity; (2) the defendant knew of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there is a causal connection between the plaintiff's protected activity and the adverse employment action she suffered. See id. at 315–16.

"Complaining to a supervisor, instituting litigation, or filing a formal complaint" about discriminatory conduct are each considered protected activities. Moore v. Hadestown Broadway LLC, No. 23-CV-4837, 2024 WL 989843, at *6 (S.D.N.Y. March 7, 2024)

(citing Ruiz v. City of N.Y., No. 14-CV-5231, 2015 WL 5146629, at
*6 (S.D.N.Y. Sept. 2, 2015)).  A complaint to a supervisor need
not have had merit to make it a protected activity.  See Lore v.
City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012).  Instead, an
employee's complaint only must be "sufficiently pointed to be
reasonably understood as a complaint [about] discrimination."
Cardwell v. Davis Polk & Wardell LLP, No. 19-CV-10256, 2020 WL
6274826, at *31 (internal quotations and citations omitted).
Thus, a plaintiff satisfies the second prong of the retaliation
pleading standard if his complaint plausibly alleges that such
protected activity put the defendant "on notice that [Plaintiff's]
complaints were about . . . discrimination, not just general
unsatisfactory or unfair conduct."  Id. (internal quotations and
citations omitted).

    Adverse employment actions include "any action that 'could
well dissuade a reasonable worker from making or supporting a
charge of discrimination.'"  Vega, 801 F.3d at 90 (quoting
Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).
A plaintiff can plausibly allege his participation in a protected
activity caused his adverse employment action either
"(1) indirectly, by showing that the protected activity was
followed closely by discriminatory treatment, or through other
circumstantial evidence such as disparate treatment of fellow
employees who engaged in similar conduct; or (2) directly, through

evidence of retaliatory animus directed against the plaintiff by the defendant." Littlejohn, 795 F.3d at 319 (internal quotations and citations omitted).

    2.  Section 1983

Like Plaintiff's discrimination and hostile work environment claims, to state a retaliation claim under § 1983, Plaintiff's pleadings standards mirror those applicable to a Title VII claim. See Vega, 801 F.3d at 82. In addition, to establish municipal liability, Plaintiff must plausibly allege a Monell claim: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Wray, 490 F.3d at 195.[10]

    3.  NYCHRL and NYSHRL

As is the case for discrimination claims, Plaintiff shoulders a more relaxed burden to plead a sufficient retaliation claim under the NYCHRL and the NYSHRL. See McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020) ("Retaliation claims under the NYCHRL are subject to a broader standard than under . . . Title VII."); see also Arazi v. Cohen Bros. Realty Corp., No. 20-CV-8837, 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) (noting the "NYCHRL's more liberal

---

[10] While Plaintiff does not explicitly plead retaliation as a basis for his § 1983 claim (see AC ¶¶ 39-41), the Court construes the Amended Complaint to allege retaliation as a basis for each of Plaintiff's causes of action.

pleading standard applies" to NYSHRL retaliation claims following the 2019 statutory amendments).[11]  A complaint alleging retaliation under this more lenient standard need not plead that the plaintiff suffered an adverse employment action.  McHenry, 510 F. Supp. 3d at 67.  Instead, a plaintiff is only required to "'show that something happened that was reasonably likely to deter a person from engaging in protected activity.'"  Id. (quoting Xiang v. Eagle Enters., LLC, No. 19-CV-1752, 2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020)); see also Arazi, 2022 WL 912940 at *17.  A plaintiff's burden to allege plausibly the other three prongs necessary to state a prima facie retaliation claim under Title VII remains the same for NYCHRL and NYSHRL claims.  McHenry, 510 F. Supp. 3d at 67 (citing Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012)); see also Arazi, 2022 WL 912940 at *17.

III.  **Discussion**

The Amended Complaint is defective in several ways.  Many of the allegations are untimely, there are no allegations whatsoever to establish the elements of the Monell claim, and the remaining factual allegations plainly fail to state a Title VII claim,

---

[11] Similar to the pleading standards for discrimination claims under the NYSHRL and NYCHRL, there is some disagreement regarding the pleading standards for retaliation under the two statutes. See Shaughnessy, 2024 WL 1350083, at *12 (noting that "the NYCHRL applies a more lenient standard" than the standard for NYSHRL retaliation claims).

leaving Plaintiff without a basis to support federal subject matter jurisdiction.

### D.     Applicable Statute of Limitations

#### 1.   Title VII Claim

##### *a. Filing of EEOC Charge: 300 Day Limit*

A Title VII plaintiff must file a charge of discrimination with the EEOC either 180 or 300 days after an "alleged unlawful employment practice occurred[.]"  42 U.S.C. § 2000e-5(e)(1).  "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice"—such as New York—the 300-day limit applies.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).  "The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period."  Roches-Bowman v. City of Mount Vernon, No. 21-CV-5572, 2022 WL 3648394, at *3 (S.D.N.Y. Aug. 24, 2022) (citation omitted).

Plaintiff filed his EEOC charge on July 9, 2021.  (See Ex. 1 at 5.)  Any employment practices that occurred before September 12, 2020—300 days before July 9, 2021—are therefore time-barred, absent an applicable exception.

Plaintiff does not dispute that his Title VII discrimination and retaliation claims rely on practices that occurred before

September 12, 2020, and are untimely.  (See Pl. Opp'n at 6.)[12]
With respect to his Title VII hostile work environment claim,
Plaintiff asserts there were continuing violations which make the
conduct before September 12, 2020 actionable.  (Id. at 6, 9-10.)

The continuing violation doctrine applies where the alleged
untimely acts "were part of a continuing policy and practice of
prohibited discrimination."  Valtchev v. City of New York, 400 F.
App'x 586, 588 (2d Cir. 2010) (summary order); see also Lugo v.
City of New York, 518 F. App'x 28, 29 (2d Cir. 2013) (summary
order).  Because a hostile work environment claim "is composed of
a series of separate acts that collectively constitute one
'unlawful employment practice,' it does not matter that some of
the component acts fall outside the statutory time period."
Morgan, 536 U.S. at 117.  Provided a plaintiff is alleging such
acts constitute a single unlawful employment practice, "the entire
time period of the hostile environment may be considered for
purposes of determining liability."  Id.  Put differently, a claim
for hostile work environment will not be time-barred if (i) all
acts constituting the claim are part of the same, continuous
alleged unlawful employment practice, and (ii) at least one alleged
act falls within the required time.  See id. at 122; see also
Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004)

---

[12] Citations to Plaintiff's Opposition use ECF page numbers.

("[A] plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period.").

By contrast, "discrete acts," such as "termination, failure to promote, denial of transfer, or refusal to hire," do not implicate the continuing violation doctrine. Morgan, 536 U.S. at 114. "Each [discrete] incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" that cannot form the basis for a continuing violation claim. Id.; see also Gutierrez v. City of New York, 756 F. Supp. 2d 491, 500 (S.D.N.Y. 2010) (same).

Plaintiff's continuing violations argument is based on the January 7, 2021 Notice of Charges and his corresponding reassignment, which Plaintiff claims occurred because he reported his colleagues for violating inspection policies. (See Pl. Opp'n at 9-10.) These employment practices, which occurred during the statutory period, are exactly the sort of "discrete acts" that the Supreme Court made clear do not implicate the continuing violation doctrine. See Morgan, 536 U.S. at 112-14. Because the incidents alleged were not "part of a continuing policy and practice of prohibited discrimination," Valtchev, 400 F. App'x at 588, any discriminatory employment practices that occurred before September

12, 2020 are time-barred for purposes of Plaintiff's Title VII claim.

### b. Filing of Complaint: 90 Day Limit

In addition to the requirement that a New York Title VII plaintiff file a charge with the EEOC within 300 days of the alleged unlawful practice, once the EEOC issues a Right to Sue letter, the plaintiff has ninety days to file suit. See 42 U.S.C. § 2000e-5(f)(1); Duplan, 888 F.3d at 621 (2d Cir. 2018) (plaintiff must "file an action in federal court within 90 days of receiving a right-to-sue letter from the agency").

Plaintiff received his Right to Sue Letter on August 30, 2023 (see Ex. 2), and filed the Initial Complaint 90 days later on November 28, 2023 (Initial Compl. at 2). Plaintiff therefore filed his Initial Complaint within the proscribed 90-day period.

Defendant argues that Plaintiff's Title VII claims are nevertheless untimely because he filed the Amended Complaint on February 25, 2024, more than 90 days after receipt of his Right to Sue Letter, and the Amended Complaint does not relate back to the Initial Complaint. (See Def. Br. at 5-6.)

Generally, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B); see also ASARCO LLC v.

23

Goodwin, 756 F.3d 191, 202 (2d Cir. 2014) ("[T]he basic claim must have arisen out of the conduct set forth in the original pleading.") (quoting Slayton v. Am. Express Co., 460 F.3d 215, 228 (2d Cir. 2006)). "Even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back." Lehman XS Trust v. Greenpoint Mortg. Funding, Inc., 916 F.3d 116, 128 (2d Cir. 2019) (quoting Slayton, 460 F.3d at 228). When making this inquiry, the Court must remain mindful that "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." Slayton, 460 F.3d at 228 (quoting Siegel v. Converters Transportation, Inc., 714 F.2d 213, 216 (2d Cir. 1983)) (internal quotations omitted). "[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." Id. at 228 (quoting Stevelman v. Alias Research Inc., 174 F.3d 79, 86 (2d Cir. 1999)) (internal quotations omitted).

Recognizing that Rule 15's purpose is to afford parties the opportunity to have their claims heard on the merits, the Court concludes that Plaintiff's Initial Complaint gave Defendant adequate notice of the claims asserted in his Amended Complaint.

24

While the Initial Complaint is undoubtedly bare bones,[13] it did provide Defendant notice of the types of claims Plaintiff would ultimately pursue in the Amended Complaint: discrimination, retaliation, and hostile work environment claims. Moreover, proof of Plaintiffs' claims would not require different evidence from the claims asserted in his Initial Complaint. Cf. Nurlybayev v. ZTO Express (Cayman) Inc., No. 17-CV-6130, 2021 WL 1226865, at *4 (S.D.N.Y. Mar. 31, 2021). Accordingly, the Amended Complaint relates back to the Initial Complaint, and Plaintiff's Title VII claims are not barred for failure to file within 90 days of receipt of the Right to Sue letter.

> 2. NYSHRL, NYCHRL, and Section 1983 Claims

Plaintiff's claims under the NYSHRL and the NYCHRL are subject to a three-year statute of limitations. See Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007) (applying three-year statute of limitations to claims under the NYSHRL and the NYCHRL); N.Y. C.P.L.R. § 214(2) (NYSHRL claims); N.Y.C. Admin. Code § 8-502(d) (NYCHRL claims).

Discrimination claims under § 1981 are generally subject to a four-year statute of limitations period. See Jones v. R.R.

---

[13] In substance, Plaintiff alleged only that he "was discriminated against because of his race, national origin[,] and was subjected to retaliation and hostile work environment by defendant and defendants['] agents and employees in violation of federal, state, and city laws." (Initial Compl. ¶ 5.)

Donnelley & Sons Co., 541 U.S. 369, 382 (2004).  However, where a Plaintiff brings his § 1981 claims pursuant to § 1983, "the claims are subject to [§] 1983's three-year statute of limitations rather than [§] 1981's more variable limitations period."  Richardson v. City of New York, No. 17-CV-9447, 2018 WL 4682224, at *12 (S.D.N.Y. Sept. 28, 2018) (citations omitted); see also Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013) (holding that § 1983 actions filed in New York are subject to a three-year statute of limitations). As discussed supra Part II.B.1.b, Plaintiff's § 1981 claims are "encompassed" by his § 1983 claims and must be brought pursuant to § 1983.  Gladwin, 403 F. App'x at 605.

A three-year statute of limitations therefore applies to Plaintiff's NYSHRL, NYCHRL, and § 1983 claims.  Given the Court's decision that the Amended Complaint relates back to the Initial Complaint (see supra Part III.D.1.b), any conduct that occurred prior to November 28, 2020—three years before the Initial Complaint was filed—is time-barred for purposes of the NYSHRL, NYCHRL, and § 1983 claims.

### E.  Plaintiff's Title VII Claims

#### 1.  Disparate Treatment Discrimination

Plaintiff has failed to allege sufficiently the elements of his Title VII discrimination claim.  The Amended Complaint alleges that Defendant violated Title VII by discriminating against him because he is black with national origin in Guyana, South America.

(AC §§ 3, 37-38.)  Defendant does not dispute that Plaintiff is a member of a protected class, satisfying the first prong of Plaintiff's prima facie claim.  (See Defs. Br. at 8.)

However, Plaintiff fails to state a prima facie claim because he does not sufficiently allege the third prong—an adverse employment action.  An adverse employment action is defined as a "materially adverse change in the terms and conditions of employment."  Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotations and citations omitted), abrogated on other grounds by Davis-Garrett v. Urb. Outfitters, Inc., 921 F.3d 30 (2d Cir. 2019).  To qualify as "'materially adverse[,]' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  Id. (citation omitted).  The Court of Appeals has determined that "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities" qualify as a materially adverse change. Id. (citations omitted).

In evaluating Plaintiff's Title VII claim, the Court confines its consideration of the alleged discriminatory employment practices to those that are not time-barred—employment practices that occurred on or after September 12, 2020.  (See supra Part III.D.1.a.)  First, Plaintiff alleges that on November 1, 2020, an

27

employee within the FDNY gave Plaintiff's parking spot to a lower-ranking white employee without justification. (AC ¶ 32.) Second, the Amended Complaint asserts that on January 7, 2021, white FDNY employees falsely accused Plaintiff of various misconduct, including confronting another employee, DCI Shapner, about reporting Plaintiff to the EEO Office (id. ¶¶ 26-27, 35), and passing questions and answers to another employee, AFPI Hoyte, for a promotional interview (id. ¶ 29). Finally, Plaintiff complains that he was served with a Notice of Charges informing him he would be reassigned to a position that would preclude him from working with DCI Shapner and AFPI Hoyte (id. ¶ 30) and was instructed to avoid contact with them, which broke the FDNY's standard protocol because Plaintiff was their superior (id. ¶ 31).

Accepting these facts as true and viewing them in a light most favorable to Plaintiff, none individually or taken together amounts to an adverse employment action. With respect to the false accusations of misconduct and the Notice of Charges which informed Plaintiff of his reassignment, "[l]etters to the file and disciplinary charges only constitute adverse employment actions if they result in material negative consequences[.]" Carrington v. N.Y.C. Human Res. Admin., No. 19-CV-10301, 2020 WL 2410503, at *5 (S.D.N.Y. May 12, 2020). Plaintiff does not allege that his reassignment resulted in any negative ramifications, such as through a decrease in pay or responsibilities. (See AC ¶¶ 30-31.)

"A pure lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." <u>Sletten v. LiquidHub, Inc.</u>, No. 13-CV-1146, 2014 WL 3388866, at *9 (S.D.N.Y. July 10, 2014) (internal citations and quotations omitted). The other employment practice alleged—the loss of a parking spot—exemplifies the "mere inconvenience" that is on its own insufficient to state a materially adverse employment action. <u>Galabya</u>, 202 F.3d at 640 (2d Cir. 2000). Accordingly, Defendant's Motion to Dismiss Plaintiff's Title VII discrimination claim is granted.

### 2. Hostile Work Environment

To the extent Plaintiff asserts a claim of race discrimination based on a hostile work environment theory, the Amended Complaint lacks the factual allegations sufficient to sustain such a theory under Title VII. As discussed <u>supra</u> Part III.D.1.a, the timely alleged incidents of racial hostility or abuse for purposes of Plaintiff's Title VII claim amount to 1) Defendant's giving Plaintiff's parking spot to a lower-ranking white employee (AC ¶ 32); 2) white employees falsely accusing Plaintiff of various misconduct (<u>id.</u> ¶¶ 26-29, 35); and 3) Defendant's reassigning Plaintiff to a comparable position to separate him from the two white employees who accused him of misconduct (<u>id.</u> ¶ 30).

While Plaintiff may have "subjectively perceive[d] the environment to be abusive," <u>Moll v. Telesector Res. Grp., Inc.</u>, 94

29

F.4th 218, 229 (2d Cir. 2024) (quoting Harris v. Forklift Syss., Inc., 510 U.S. 17, 21 (1993)), these allegations do not satisfy the objective standard required to establish a hostile work environment under Title VII.  The alleged conduct neither constitutes a "single incident [that] was extraordinarily severe" nor "a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [Plaintiff's] working environment."  Alfano v. Costello, 294 F.3d 365, 374 (2d. Cir. 2002) (internal quotations and citations omitted).  Moreover, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotations and citations omitted).  The handful of incidents that Plaintiff alleges do not indicate his workplace was "permeated with discriminatory intimidation, ridicule, and insult," Pattanayak v. Mastercard Inc., No. 22-1411, 2023 WL 2358826, at *4 (2d Cir. Mar. 6, 2023) (internal citations omitted), and, in the aggregate, do not amount to a pervasive hostile work environment, see Boyar v. Yellen, No. 21-507, 2022 WL 120356, at *3 (2d Cir. Jan. 13, 2022) (no hostile work environment where supervisor threatened to "wring [the plaintiff's] neck," "ignored him at a meeting," "yelled at him very loudly," and "told him he had 90 minutes to complete two certification exams, when he had 60 minutes to complete each."); see also Fleming v. MaxMara USA, Inc.,

371 F. App'x 115, 119 (2d Cir. 2010) (no hostile work environment where supervisor "wrongly excluded [plaintiff] from meetings, excessively criticized [plaintiff's] work, refused to answer work-related questions, arbitrarily imposed duties outside of [plaintiff's] responsibilities, threw books, and sent rude e-mails"). Plaintiff's allegations do not amount to a pervasive hostile work environment. Accordingly, Defendant's Motion to Dismiss is granted with respect to Plaintiff's Title VII hostile work environment claim.

### 3. Retaliation

Plaintiff's allegations in support of Title VII retaliation also fall short. Like Plaintiff's discrimination and hostile work environment claims, the timely allegations of retaliation for purposes of his Title VII claim consist of the taking of his parking spot, the accusations of misconduct, and the Notice of Charges and corresponding reassignment. (AC ¶¶ 26-30, 32.) But Plaintiff does not allege the first element required to state a prima facie case of retaliation—that he participated in any protected activity to prompt these retaliatory actions. Instead, the Amended Complaint asserts that these employment actions were taken in response to Plaintiff's July 2019 reports that inspectors of other races in the FDNY had conducted sham and ghost inspections. (AC ¶ 11.)

"[T]he plaintiff 'is required to have had a good faith, reasonable belief that she was opposing an [unlawful] employment practice.'"  Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013).  "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."  Id. at 17.   While Plaintiff alleges that he reported inspectors of other races for the quality of their inspections, nothing in the Amended Complaint suggests that Plaintiff's complaints were reports of discriminatory behavior. Because Plaintiff has failed to allege any facts that plausibly suggest he engaged in protected activity, he fails to state a claim of retaliation.[14]

**F. Section 1983 Claims**

Plaintiff's claims for municipal liability under § 1983 (AC ¶¶ 39-41) are plainly insufficient.  The Amended Complaint lacks any allegation whatsoever of an "official policy or custom."  See Anderson v. City of New York, 712 F. Supp. 3d 412, 431 (S.D.N.Y. 2024).  Plaintiff also offers no support for these claims in his

---

[14] As discussed in the context of Plaintiff's discrimination claim, supra Part III.E.1, the Amended Complaint also fails to allege sufficiently that Plaintiff suffered an adverse employment action, an element required to state a Title VII retaliation claim as well.

Opposition.    Accordingly,   Defendant's   Motion   to   Dismiss
Plaintiff's § 1983 claims is granted.

### G. NYSHRL and NYCHRL Claims

Plaintiff also asserts his claims pursuant to the NYSHRL and
NYCHRL.   (AC ¶¶ 42-45.)   The Court may decline to exercise
supplemental jurisdiction over a claim where all claims over which
it had original jurisdiction have been dismissed.   See 28 U.S.C.
§ 1367(c)(3).   While district courts have discretion to exercise
supplemental jurisdiction over remaining state law claims, when
"all federal-law claims are eliminated before trial, the balance
of factors . . . will point toward declining to exercise
jurisdiction[.]"  Catzin v. Thank You & Good Luck Corp., 899 F.3d
77, 81 (2d Cir. 2018) (quoting Carnegie-Mellon Univ. v. Cohill,
484 U.S. 343, 350 (1988)).   In conducting such an evaluation,
courts balance "judicial economy, convenience, fairness, and
comity."  Id.  "In the context of employment discrimination cases,
courts in this district routinely decline to exercise supplemental
jurisdiction over state- and city-law claims when the federal
claims have been dismissed."  Munck v. Simons Found., No. 23-CV-
9188, 2024 WL 4307776, at *9 (S.D.N.Y. Sept. 26, 2024); see, e.g.,
Charley v. Total Off. Plan. Servs., Inc., 202 F. Supp. 3d 424, 432
(S.D.N.Y. 2016).   Furthermore, courts may decline to exercise
supplemental jurisdiction over claims that present novel or
complex issues of state law.  See 28 U.S.C. § 1367(c)(1).

Here, Plaintiff's remaining claims involve unsettled questions of state law with respect to the pleading standards for NYSHRL and NYCHRL claims. See, e.g., Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (explaining that "claims under the City HRL must be reviewed independently from" and "more liberally" than their federal counterparts); McHenry, 510 F. Supp. 3d at 68 (observing that "[i]n August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, [more] liberally" (internal citations and quotations omitted)); Valerio, 2025 WL 686028 at *3 (considering NYSHRL and NYCHRL claims together); Shaughnessy, 2024 WL 1350083 at *10 (noting that it is unclear if the 2019 amendment made the NYCHRL and NYSHRL pleading standards the same); Nezaj v. PS450 Bar & Rest., 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) (questioning the same). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. See Daniel v. City of New York, No. 20-CV-11028, 2021 WL 5988305, at *11 (S.D.N.Y. Dec. 16, 2021) (declining for similar reasons to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims after dismissing Title VII claim at the Rule 12(b)(6) stage); Pompey-Primus v. Success Acad. Charter Sch., Inc., No. 21-CV-3981, 2022 WL 504541, at *10 (S.D.N.Y. Feb. 17, 2022) (same).

## IV.    <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion to Dismiss Count One, Plaintiff's Title VII claims, and Count Two, Plaintiff's § 1983 claims [dkt. no. 10], is GRANTED with prejudice. Defendant's Motion to Dismiss Count Three, Plaintiff's NYSHRL claims, and Count Four, Plaintiff's NYCHRL claims [dkt. no. 10], is GRANTED without prejudice.  The Clerk of Court is respectfully directed to close docket entry 10 and to mark the action closed and all pending motions denied as moot.

**SO ORDERED.**

Dated:    March 28, 2025
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge